AO 106 (Rev. 04/010) Application for Search Warrant    AUTHORIZED AND APPROVED/DATE: BH 2.12.2026

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF OKLAHOMA

In the Matter of the Search of )
*(Briefly describe the property to be search* )
*Or identify the person by name and address)* )   Case No: MJ-26-88-SM
Motorola 50MP Quad Pixel, )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following Property *(identify the person or describe property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim.P.41(c) is*(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of and/or Accessing with Intent to View Child Pornography |

The application is based on these facts:
See attached Affidavit of Special Agent Marisol Flores, Federal Bureau of Investigation, which is incorporated by reference herein.

- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of [No. of Days]   days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*
Marisol Flores
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: Feb. 13, 2026

_____
*Judge's signature*

City and State: Oklahoma City, Oklahoma    SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Marisol Flores, Special Agent with the Federal Bureau of Investigation ("FBI"), Oklahoma City, Oklahoma, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the FBI since May of 2015 and have been assigned to the Oklahoma City FBI Field Office since October of 2015. During that time, I have conducted a wide variety of investigations, including cases involving child pornography and sexual exploitation of children.

2. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This Affidavit is made in support of an application for a warrant to search a Motorola 50MP Quad Pixel ("the Subject Phone"), which is presently at the Oklahoma City FBI Field Office Evidence Room, within the Western District of Oklahoma.[1] As set forth below, there is probable cause to believe that the Subject Phone contains instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A(a)(5)(B) (Possession of and/or Accessing with Intent to View Child Pornography).

4. This investigation, described more fully below, has revealed that Paul Hudson possessed and/or accessed with intent to view child pornography, and there is

---

[1] To my knowledge, this device was not manufactured within the state of Oklahoma.

probable cause to believe that evidence, fruits, and instrumentalities of his violations are located on the Subject Phone.

5.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## BACKGROUND OF INVESTIGATION

6.      In August of 2015, Paul Hudson was convicted of receipt of child pornography and sentenced to 86 months in prison and 5 years of supervised release which began on May 1, 2020. Hudson's supervised release was revoked on March 8, 2023, for drug use, having contact with a felon, and being at a residence where a minor resides, and he received 9 months in prison followed by 3 years of supervised release, which began on June 6, 2023. Part of Hudson's current supervised release conditions require him to obtain approval for owning any devices which have Internet access. In February of 2026, while on supervised release, the United States Probation Office (USPO) determined Hudson had purchased a cell phone without approval. Due to Hudson violating that condition, USPO confiscated Hudson's unapproved cell phone, the Subject Phone. Hudson told USPO officer Aric Holloway that there was child pornography on the Subject Phone. Officer Holloway gave the Subject Phone to me on February 12, 2026.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH INTENT TO VIEW, POSSESS, COLLECT, RECEIVE, OR DISTRIBUTE CHILD PORNOGRAPHY

7.      Based on my previous investigative experience related to child pornography

2

investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals with the intent to view and/or possess, collect, receive, or distribute images of child pornography:

    a.    Individuals with intent to view and/or possess, collect, receive, or distribute child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

    b.    Individuals with intent to view and/or possess, collect, receive, or distribute child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children often use these materials for their sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c.    Individuals with intent to view and/or possess, collect, receive, or distribute child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest

in children or images of children typically retain photos, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years, and they often retain child pornography files among multiple devices.

       d.     Likewise, individuals with the intent to view and/or possess, collect, receive, or distribute pornography often maintain their collections that are in a digital or electronic format in a secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly.

       e.     Individuals with intent to view and/or possess, collect, receive, or distribute child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interest in child pornography.

       f.     Individuals who would know how to access online forums, such as bulletin boards, newsgroups, Internet relay chat, or chat rooms are considered more advanced users and therefore more experienced in acquiring and storing a collection of child pornography images.

       g.     Individuals with intent to view and/or possess, collect, receive, or

distribute child pornography prefer not to be without their child pornography for any prolonged period and often repeatedly view child pornography. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## BACKGROUND ON DIGITAL MEDIA STORAGE DEVICES AND CHILD PORNOGRAPHY

8.  The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. Other digital media storage devices (e.g., compact disks, digital video disks, floppy disks, cell phones, Blackberries, iPhones, thumb drives, video gaming stations, etc.) can also store tremendous amounts of digital information, including digital video and picture files.

9.  As is the case with most digital technology, communications by way of computer can be saved or stored on the computer. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.

Such information is often maintained indefinitely until overwritten by other data. Further, even if deleted, forensic examination can sometimes recover files and data including deleted picture files.

10. Computers and other digital file storage devices can store the equivalent of thousands of pages of digital information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks depending on the volume of the data stored, and it would be generally impossible to accomplish this kind of data search on site. Furthermore, I know that smart cell phones (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "synch" with a traditional desktop or laptop computer. The purpose of synching a smart phone to a traditional computer is to back up data that is stored on the phone so that it is not permanently lost if the portable smart phone is lost or damaged. Also, smart phone users may move files off the smart phone and onto a computer to free up storage space on the smart phone. Similarly, computer (e.g., desktop computers, smart phones, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, or an external hard drive to free up space on the computer.

## SEARCHING COMPUTERS

11. Searching computers for criminal evidence is a highly technical process requiring skill and a properly controlled environment. The search of a computer or computer system is an exacting scientific procedure designed to protect the integrity of the

evidence and to recover hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is vulnerable to tampering or destruction, the controlled atmosphere of a laboratory is essential to complete this task. The FBI, Oklahoma City Division ("OCD"), has such a laboratory staffed with certified computer forensic examiners. The Subject Phone will be taken to the FBI OCD lab for analysis. Identical copies of the original storage media will be produced by the assigned forensic examiner so as to maintain the integrity of the original evidence.

## CONCLUSION

12. Based on the above information, there is probable cause to believe that 18 U.S.C. § 2252A(a)(5)(B) has been violated, and that evidence, fruits, and instrumentalities of these offenses are located on the Subject Phone.

13. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the Subject Phone, described in Attachment A, authorizing the seizure of the items described in Attachment B to this Affidavit.

14. Because the requested warrant is for the search of a device already within FBI's possession, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

_____
Marisol Flores
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 13th day of February, 2026.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF THE SUBJECT PHONE TO BE SEARCHED

1. Motorola 50MP Quad Pixel

The Subject Phone is presently located at the Oklahoma City FBI Field Office Evidence Room and is depicted below:

 

## ATTACHMENT B

## <u>LIST OF ITEMS TO BE SEIZED</u>

Evidence of violations of 18 U.S.C. § 2252A(a)(5)(B), including:

1. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

2. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession or accessing with the intent to view child pornography as defined in 18 U.S.C. § 2256(8) or to the possession or accessing with the intent to view of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

3. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), and visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

5.  Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the possession or accessing with the intent to view of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.  Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

7.  Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

8.  Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

9.  Any and all visual depictions of minors engaging in sexually explicit conduct and any and all records indicating the identity of depicted minors.

10. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the identity of the user of the Subject Phone described in Attachment A, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, as well as any emails, usernames, documents, and chat conversations that aid in identifying the user.

11. Any and all notes and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, contraband, and/or fruits described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.